# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

ARNETTA McCLOUD, et al.,

      Plaintiffs,

v.                                            CASE NO.  4:05cv101-RH/WCS

KENNETH W. FORTUNE, etc.,
et al.,

      Defendants.

_____/

## ORDER GRANTING SUMMARY JUDGMENT IN PART

      This action arises from a roadside stop, search, and prolonged detention of the driver of a vehicle and his three passengers (all family members).  The two female passengers were strip searched.  The driver and all three passengers assert claims against five officers who participated in the events and against the sheriff for whom they worked.  The sheriff and four of the officers have moved for summary judgment.  I grant the motions in part.

## **Facts**[1]

A confidential informant working with the Jefferson County, Florida, Sheriff's Department made a controlled buy of cocaine from plaintiff Freddy McCloud late on the night of July 10, 2001. While the evidence is unclear, the buy may have occurred at roughly 10:30 or 11:30 p.m. The informant advised officers that Mr. McCloud would be traveling to Tallahassee, roughly 25 miles away, in about an hour, and that he would have cocaine in his possession. Mr. McCloud's vehicle was a white Lincoln. Deputies on the road were asked to be on the lookout for the car.

Defendant Gerald Knecht, a Jefferson County deputy sheriff, saw a white Lincoln driving toward Tallahassee at approximately 12:30 a.m. on July 11. He pulled the car for speeding. Mr. McCloud was driving. His wife Arnetta McCloud was in the front passenger seat, and two teenage children (the McClouds' daughter Cynthia and Ms. McCloud's nephew (and ward) Marcus Frazier) were in the back. For convenience, the four occupants of the vehicle are collectively referred to in

---

[1] The facts are set forth here based on the sworn evidence in this record, with disputes resolved in favor of plaintiffs and all reasonable inferences drawn in favor of plaintiffs, as appropriate in evaluating defendants' summary judgment motions. This order provides only a brief summary; a more detailed recitation of the facts would serve no purpose. Trial is imminent, and it is likely that the facts as established at trial will differ from the facts established by this record, especially when viewed in the light most favorable to the plaintiffs as appropriate on a motion for summary judgment.

*Case No: 4:05cv101-RH/WCS*

this order as "the McClouds."

Mr. McCloud consented to a search of the car. Other officers arrived, including defendant George Stinson, who brought his drug dog. The dog alerted to the trunk and the rear passenger seat where Cynthia McCloud had been seated. Cynthia McCloud and Arnetta McCloud were strip searched on the roadside by a female deputy in full view of the other deputies and any passing vehicles. No contraband was found anywhere. The McClouds were taken to the house where they had been visiting, which was searched, perhaps with the occupants' consent.[2] Still no contraband was found. The McClouds were released at 4:00 a.m., more than three hours after they were stopped.

In November 2001, more than four months later, Mr. McCloud was charged with having possessed cocaine on July 10, 2001. The charge ultimately was dropped, apparently because the confidential informant (an essential witness) was uncooperative.

The McClouds filed this action against Jefferson County Sheriff Kenneth W. Fortune in his official and individual capacities and against subordinate officers Michael Joyner, George Stinson, Gerald Knecht, William D. Hayes, and David

---

[2] The Kings, whose home it was, originally joined this action as plaintiffs, asserting any "consent" was involuntary. Their claims have been settled.

Clark, all of whom participated in at least some of the events of July 11, 2001.[3] The McClouds seek to recover against all defendants under 42 U.S.C. §1983 for violation of the Fourth and Fourteenth Amendments (count 1), on state law theories of false imprisonment (count 4) and intentional infliction of emotional distress (count 5), and for conspiracy to violate civil rights (count 12).  Mr. McCloud also asserts claims against the sheriff and Mr. Hayes for malicious prosecution (count 2) and false arrest or imprisonment (count 3), based on the criminal charges that were filed against him.  Arnetta McCloud asserts against all defendants claims of assault (count 6) and battery (count 7), as does Cynthia McCloud (counts 8 and 9), based on the strip searches.

Sheriff Hobbs in his official capacity has moved for summary judgment on all counts except count 1.  Former Sheriff Fortune has moved for summary judgment on all counts.  Defendants Stinson, Knecht, Hayes, and Clark have moved for summary judgment on all counts in which they are named.  Defendant Joyner has not moved for summary judgment.

---

[3] Deputy William L. Massey was originally named as an additional defendant, but claims against him were dropped.  Other original defendants included Mack Norton of the Monticello Police Department and Evelyn Anderson of the Leon County Sheriff's Department.  They have settled.

## Analysis

### I. *The Stop, Vehicle Search, and Attendant Detention*

The stop of the Lincoln for speeding was lawful, even if the real purpose was not to enforce the traffic laws but to look for drugs. *See Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). As is undisputed, Mr. McCloud consented to a search of the car, rendering its search lawful. After the dog alerted, the officers had probable cause to search the car, providing further support for a continued search of the vehicle. *See, e.g., Illinois v. Caballes*, — U.S. —, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005); *United States v. Watts*, 329 F.3d 1282 (11th Cir. 2003). I assume, for purposes of this order, that officers were entitled to detain the vehicle's other three occupants while the search of the vehicle proceeded. *Cf. Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981) (approving detention of occupants while residence is searched pursuant to warrant).

### II. *The Strip Search*

Officers were not, however, entitled to strip search Arnetta or Cynthia McCloud. Under circumstances like these, a strip search may proceed only if officers "have at least a reasonable suspicion that the strip search is necessary for evidentiary reasons." *Evans v. Stephens*, 407 F.3d 1272, 1279 (11th Cir. 2005) (en

banc).  Here the officers had no information providing any basis to believe contraband might be secreted by Cynthia McCloud in a manner requiring a strip search, and even less basis to believe contraband might be secreted by Arnetta McCloud.  That a strip search was improper under these circumstances was clearly established.  *See Brent v. Ashley*, 247 F.3d 1294 (11th Cir. April 19, 2001) (rejecting qualified immunity defense for officers who ordered strip search without a particularized basis for reasonable suspicion).  Even more clearly, it was unlawful to conduct a strip search along a public highway in full view of male officers.  Commendably, defendants now make no claim that the strip searches were lawful.

This does not mean, however, that individual officers who did not authorize or participate in any way in the strip searches can be held liable for the strip searches in this action.  The doctrine of qualified immunity—applicable to plaintiff's §1983 claims but not to their state claims—protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986); *see generally Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  Thus an officer whose conduct is later held to have been unlawful, but whose conduct did not violate law that was clearly established at the time, cannot be held liable under

§1983.  Under Florida law, an officer cannot be held individually liable unless he or she acts "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  §768.28(9)(a), Fla. Stat. (2001).

Defendants Stinson, Knecht, and Clark cannot be held liable for the strip searches under these standards.  First, the record does not establish that they had sufficient information to know whether there existed reasonable suspicion supporting a strip search—under the law as it existed at the time, or under the law as it now exists.  Second, an officer who merely stands by while another officer commits a constitutional violation is not liable if he or she is "not in a position to intervene."  *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986).  The record does not establish that these officers were in a position to intervene.  And third, it was, in any event, not clearly established at the time of these searches that an officer standing by *under these circumstances* had a duty to intervene.  For the same reasons, it cannot be said that these officers acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights." §768.28(9)(a), Fla. Stat. (2001).  The motions of defendants Stinson, Knecht, and Clark for summary judgment on the strip search claims will be granted.

The same analysis does not, however, absolve defendant Hayes.  There is evidence that he was the decision maker in charge of events on the ground.  That

evidence must be accepted as true for purposes of Mr. Hayes' motion for summary judgment. It was at least clear at the time that a strip search in view of male officers along a public highway was unconstitutional. *See, e.g., Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005) (en banc) (rejecting qualified immunity defense based on manner in which strip search was conducted; applicable law was clearly established in 1999); *Justice v. City of Peachtree City*, 961 F.2d 188 (11th Cir. 1992) (authorizing strip search conducted in least intrusive manner). If Mr. Hayes authorized the strip search and the manner in which it was conducted, he violated clearly established law. And even if he did not authorize it, he apparently was in a "position to intervene," *Byrd*, 783 F.2d at 1007, and thus may be held liable for failing to do so. Mr. Hayes' motion for summary judgment with respect to the strip searches will be denied.

## III.  *Detention of Mr. McCloud after the Search*

Officers were entitled to detain Mr. McCloud even after the search ended. They had probable cause to believe he had committed a felony—sale of cocaine—shortly before the stop. That they did not explicitly announce a formal arrest, and that they later let him go, does not alter the analysis; the issue is whether the officers had probable cause to arrest him when in substance they did in fact arrest him (by holding him after the conclusion of the roadside search). Because the officers had probable cause, the arrest was not unlawful.

Nor may Mr. McCloud recover based on the later filing of criminal charges. It is undisputed that officers sent a confidential informant to make a controlled buy, that the informant in fact made contact with Mr. McCloud during the purported buy, and that the informant brought cocaine back to the officers and said he had bought it from Mr. McCloud. Although Mr. McCloud says no cocaine sale took place, the issue is not whether the evidence was conclusive, but only whether the evidence was sufficient to provide probable cause. It plainly was—even when combined with Mr. McCloud's denials and the officers' failure to turn up contraband during searches of the residence and Lincoln.

Mr. McCloud asserts, however, that the filing of charges was done for a bad purpose—to retaliate for Mr. McCloud's request, through an attorney, for records of the events of July 10 and 11. But whatever the officers' or prosecutor's motivation, the filing of criminal charges based on probable cause does not constitute malicious prosecution. And when charges are filed based on probable cause and for the purpose of obtaining a criminal conviction—whatever the underlying motivation—no action will lie for false arrest or false imprisonment. Summary judgment will be granted accordingly.

## IV.  *Detention of the Passengers after the Search*

Officers were not, however, entitled to hold the vehicle's other three occupants after the roadside search ended. There was not a shred of evidence

suggesting that any of those three had committed any crime.

Indeed, the passengers were members of a family riding in a family car on a family vacation.  Officers reasonably believed the father made a drug sale an hour or two earlier at a different location, but officers had no reason to believe the other family members were present at the time of the transaction, let alone that they participated in it.  The dog alerted to Cynthia McCloud's seat in the vehicle, but that hardly indicates she had drugs on her person, and by the time the search ended, officers well knew she did not, because she had been thoroughly (indeed too thoroughly) searched, and nothing had been found.  And the dog did not alert to the seats where Arnetta McCloud or Marcus Frasier had been sitting.  Officers had no reason to believe that drugs and any of these three occupants had ever been in the car at the same time.

The law precluding arrest of a passenger in a vehicle whose driver officers believe has committed a crime was clearly established, dating at least to a 1958 decision of the United States Supreme Court.  *See United States v. Di Re*, 332 U.S. 582, 68 S. Ct. 222, 92 L. Ed. 210 (1948).  In that case, an informant told officers he would obtain counterfeit gasoline ration coupons from a named individual at a specified location.  Officers showed up and found the informant in the back seat of a vehicle holding coupons.  The individual who had been named by the informant was in the driver's seat.  Officers arrested not only that individual but also a front-

seat passenger. The Supreme Court held arrest of the passenger improper: "[A]ny inference that everyone on the scene of a crime is a party to it must disappear if the government informer singles out the guilty person." *Id*. at 594. In the case at bar, as in *Di Re*, a government informant identified the guilty party (Mr. McCloud), making clear that arrest of the passengers would have been improper, even if contraband had been found in the car.

*After* the detention of the passengers in the case at bar, the Supreme Court decided *Maryland v. Pringle*, 540 U.S. 366, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003), which addressed the scope of *Di Re*. In *Pringle*, officers found contraband in a car, had no basis for allocating the contraband among the occupants, and all occupants denied knowledge of the contraband. The Supreme Court held that officers could lawfully arrest them all.

The officers in the case at bar of course could not have relied on *Pringle*, which had not yet been decided. Moreover, no contraband was found in this car. Further, even if contraband had been found, arresting the passengers here would have been improper, because here, as in *Di Re* but not *Pringle*, the officers had reason to attribute any contraband to the driver. Indeed, there was much less basis to arrest the passengers in the case at bar than in *Di Re*. The passenger in *Di Re* apparently had been present for an unlawful sale of contraband that had just occurred. In the case at bar, in contrast, the officers had no reason to believe the

passengers were even present when any unlawful activity took place.  If, as the Supreme Court held in *Di Re*, a passenger who is present when the driver makes an unlawful sale cannot be arrested, then even more clearly a passenger cannot be arrested just because the driver made a sale at another time and place (and apparently had contraband in the car at some earlier time).

      Defendants also assert that they have qualified immunity because they were entitled to detain the passengers during the roadside stop and search, and although the Eleventh Circuit had said 90 minutes is "probably" too long for such a stop, *see United States v. Simmons*, 172 F.3d 775 (11th Cir. 1999), that ambiguous statement was not sufficient to render the law on this clearly established.  But this misses the point.  These passengers were held not only during the roadside stop but for more than an hour at a different location.  Officers with grounds to stop a vehicle can hold it for as long as reasonably necessary to satisfy the lawful purposes of the stop.  *See, e.g., United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir.1999).  But no matter how long a roadside stop might reasonably last or how flexible the standard, in the case at bar the officers detained these passengers for much longer than necessary.  Indeed, the officers finished at the roadside and took the passengers to a different location—the residence they had been visiting—thus making clear that further detention at the roadside was unnecessary.  The officers had absolutely no basis for detaining the passengers after they finished the roadside

stop and search.  Holding them longer violated clearly established law.

## V.  *Conspiracy*

Plaintiffs' count 12 alleges a conspiracy to violate their "civil rights."  The count does not make clear whether it attempts to allege a federal or state claim.  But it does not matter.  On any view, count 12 adds nothing to the remainder of the complaint.  Officers who act together, as these officers did in at least some respects, are liable or not under federal and state law depending on the circumstances and the scope of their involvement.  Saying they "conspired" does not change the analysis, at least under the circumstances of this case.

The case will go to the jury on the underlying substantive claims and appropriate instructions concerning the grounds on which any individual defendant may be held liable.  Count 12 will be dismissed as redundant.  *Cf. Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (approving dismissal of official capacity defendants whose presence was merely redundant to naming of institutional defendant).

## VI.  *Sheriff Fortune*

Sheriff Fortune no longer holds office.  The new Sheriff, David C. Hobbs, will be substituted as the proper official capacity defendant.  It is undisputed that Sheriff Fortune had no individual involvement in any of the constitutional violations remaining at issue.  His motion for summary judgment thus will be

granted.

## VII.  *Sheriff Hobbs*

Sheriff Hobbs seeks summary judgment on all state law counts.  He contends that by suing individual officers on those counts, plaintiffs admit they acted in bad faith, maliciously, or willfully and wantonly, as required for individual liability under §768.68(9), Florida Statutes.  The Sheriff correctly notes that if an individual acted in bad faith, maliciously, or willfully and wantonly so as to subject the individual to liability, the Sheriff is to that same extent exonerated from liability, under the same statute.  Individual and official capacity liability are mutually exclusive.

But the fact that an individual and the Sheriff in his official capacity cannot both be liable for the same act does not answer the question of *which* is liable.  A plaintiff may plead in the alternative.  For acts committed in bad faith, maliciously, or willfully and wantonly, individual officers may be held liable.  For other acts, the Sheriff may be held liable.  Plaintiffs may go to the jury or alternative theories, so long as each has sufficient support in the evidence.

With respect to one count, however, the Sheriff's motion for summary judgment is well founded.  In count 5, plaintiffs allege intentional infliction of emotional distress.  Any conduct sufficient to constitute that tort is necessarily sufficiently willful or wanton as to preclude official capacity liability.

*Case No: 4:05cv101-RH/WCS*

## **Conclusion**

For these reasons,

IT IS ORDERED:

1. Sheriff David C. Hobbs in his official capacity is hereby substituted as a party defendant in place of Sheriff Kenneth W. Fortune in his official capacity.

2. Count 12 of the second amended complaint is dismissed as redundant.

3. The motion for summary judgment filed by defendant Sheriff David C. Hobbs in his official capacity (document 70) is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to claims of plaintiff Freddy McCloud and with respect to count 5. The motion is denied with respect to claims of other plaintiffs as asserted in counts 4 and 6 through 9. The remaining claims against Sheriff Hobbs are count 1, count 4 (limited to claims of plaintiffs Arnetta McCloud, Cynthia McCloud, and Marcus Frasier), and counts 6 through 9.[4]

4. The motion for summary judgment filed by defendant Sheriff Kenneth W. Fortune in his individual capacity (document 71) is GRANTED. All claims

---

[4] Although the motion for summary judgment also addressed counts 10 and 11, those counts asserted claims by plaintiffs Bernard King and Chesley King. Their claims were settled and are no longer at issue.

against Mr. Fortune individually are dismissed with prejudice.[5]

5. The motions for summary judgment filed by defendants George Stinson (document 73), Gerald Knecht (document 74), and David Clark (document 76) are GRANTED IN PART and DENIED IN PART. The motions are granted with respect to counts 5, 6, 7, 8, and 9. The motions are denied with respect to counts 1 and 4. The case thus remains pending against these defendants on counts 1 and 4.

6. The motion for summary judgment filed by defendant William D. Hayes (document 75) is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to count 5 and denied with respect to counts 1, 4, 6, 7, 8, and 9.

7. Trial remains scheduled for Wednesday, December 7, 2005, commencing with an attorney conference at 8:15 a.m.

SO ORDERED this 2d day of December, 2005.

s/Robert L. Hinkle
Chief United States District Judge

---

[5] Mr. Fortune's motion also correctly notes that he is no longer a proper defendant in his official capacity. That issue has been addressed by substitution of the current sheriff as set forth in paragraph 1 above.